## Commonwealth v. Phillips

*S. V. Hosterman,* for exceptions.
*K. L. Shirk,* contra.

SCHAEFFER, P. J., November 7, 1941.—On June 6, 1941, the court ordered the forfeiture of $614 in cash taken by the police from the person of Clifford Phillips, defendant, who pleaded guilty to bookmaking. Exceptions were filed by defendant to the order of distribution and to the findings of the court. At the time of defendant's arrest he had on his person in his left trouser pocket a roll of money with a rubber band around it amounting to $614 in denominations from $50 down. In his right trouser pocket defendant had $35.25 loose money. When defendant's premises in Lancaster City were raided by the city police on Saturday, January 25, 1941, at about 3 p.m., defendant tried to pass a roll of money with a rubber band around it to a reputed gambler on defendant's premises and who was likewise arrested. When cautioned by the police defendant put this money back in his left trouser pocket. Later at the

police station defendant claimed that the $35.25 loose money in his right trouser pocket was his own money, but he kept silent and made no claim or statement at that time as to the $614 in his left trouser pocket. Later, about February 28, 1941, and at the hearing in court defendant changed his prior statement with regard to the $35.25, then claiming that it was used by him in his gambling on the day of the raid, and that the $614 represented money derived from his delicatessen store conducted in the front part of his premises.

Defendant contends that "mathematically" the evidence did not warrant the court's conclusion. It was testified that the 52 betting slips found by the police consisted of two $10 bets and the balance $1 and $2 bets. Defendant argues that even if all the slips had represented $10 bets the total would be only $520 instead of $614. Warfel, an employe of defendant, had the racing slips. It was testified that Warfel said that "Mr. Phillips told him if the police came he was to destroy them." Defendant himself testified as follows:

"(Q) When you pay off on a horse, don't you destroy the slips or mark it paid in any way? (A) Sometimes. . . . (Q) All the slips that were there were bets of that day? (A) Which they found, yes. (Q) Then the statement is wrong that the officers made, that in addition to these 52 slips ranging from $1 to $10 that day, that they also found other slips for races for the day before? (A) They found slips out back of the house, but I don't know what day it was. (Q) You kept no track of them from day to day? (A) No.". Defendant further testified:

"(Q) Do I understand you to say then, that on this Saturday in question you paid off bets for the preceding day, that is Friday's bets, and that you went to some part of the house and got the money to pay off those bets? (A) That is right."

It is evident from the quoted and other testimony of

defendant that the "mathematical" argument is not convincing.

Defendant claims that if part of the $614 constituted gambling money of the preceding day it would have lost its connection with the gambling operation and so could not be earmarked or segregated as contraband, according to Rosen v. Superintendent of Police et al., 120 Pa. Superior Ct. 59, 62. Defendant's contention cannot prevail in view of defendant's testimony that all and not a part of the $614 represented store money.

Defendant cites Commonwealth v. Ferrari et al., 2 Fay. L. J. 51 (1938), which held that money seized in a crap game or on the person of a defendant cannot be confiscated and forfeited unless it clearly appears that it formed an integral part of the illegal gambling operation. The court took into consideration the manner in which the paper money found in the pocket of one of the defendants was folded or wrinkled and that it was not in a roll. The same court later in 1939 in a similar case, Commonwealth v. Betters et al., 2 Fay. L. J. 54, ordered the forfeiture of money found in the pocket of defendant who was arrested and convicted of conducting a lottery. Defendant there claimed that the money represented a loan from another party, but the court said (p. 57):

"We do not conceive it to be our duty to give effect to testimony that we do not believe. . . . the claim is based entirely upon fabricated testimony".

While money is usually the stake or profit of gambling and not a gambling device, nevertheless money may be subject to seizure when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation and had not been reclaimed and taken back into defendant's exclusive possession. The $614 in defendant's pocket when he was actually engaged in bookmaking was an integral part of the illegal gambling. It was segregated and the evidence warrants the conclusion that it was

being used for bookmaking purposes and that it had not been reclaimed by defendant for his own private or exclusive use.

The other questions raised by defendant were passed upon by this court in its former opinion in this same case filed on June 6, 1941, and reported in 47 Lanc. L. R. 501. No further discussion thereof is necessary.

And now, November 7, 1941, the court dismisses the exceptions filed by defendant in this case and the court confirms the order of forfeiture of the $614 in cash, entered on June 6, 1941, as aforesaid.